IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,
                Plaintiff,

vs.
                                          Case No. 25-CR-63-wmc-002

SHAVARIM J. WICKS,
                Defendant.

---

SUPPLEMENT TO PRETRIAL MOTIONS

---

SUPPLEMENT TO MOTION FOR BILL OF PARTICULARS-IDENTITY OF
UNINDICTED CO-CONSPIRATORS

      Shavarim Wicks moved the court to order the government to provide a bill of particulars containing the names of the unindicted co-conspirators in count 1 and the dates that those individuals allegedly joined the conspiracy. Count 1 alleges that "from in or about March 12, 2024, to on or about March 20, 2025" Wicks and six other named individuals conspired with each other and with "others known and unknown to the grand jury" to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine and a mixture or substance containing a detectable amount of fentanyl.

      Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars." As far as the specific request for the names of unindicted co-conspirators, this Court has previously explained

that "the identities of …uninindicted co-conspirators…are proper matters for inclusion in a bill of particulars." *United States v. Fine*, 413 F.Supp. 740, 746 (W.D. Wis. 1976). This Court has also acknowledged that the identity of unnamed co-conspirators is "information [that] still appears to be an exception to the Seventh Circuit's general antipathy towards bill of particulars." *United States v. Young*, No. 98 CR 91, 2005 WL 2100975, at *1 (W.D. Wis. Aug. 30, 2005), citing *United States v. McAnderson*, 914 F.2nd 934, 946-47 (7th Cir. 1990)(no bill necessary where government identifies the alleged co-conspirators); *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991) (one reason no bill required is because government provided names of all co-conspirators not identified in indictment).

Wicks needs the names of unindicted co-conspirators for three primary reasons. First, he needs the names to fairly and adequately investigate the case. If the government thinks that Wicks conspired with other unnamed individuals over the course of a conspiracy that allegedly lasted for over one year, Wicks is entitled to the names of the unindicted co-conspirators as a matter of fundamental fairness. Wicks needs this information now so that he may contact those individuals before trial to learn if they have information relevant to the alleged conspiracy.

Second, Wicks needs the names of unindicted co-conspirators to prepare for trial and avoid unfair surprises at trial. Rule 801(d)(2)(E) provides that

statements "made by the party's co-conspirator during and in furtherance of the conspiracy" are not hearsay and may be admissible at trial against a defendant. "Thus, whether the government will allege that a person is a co-conspirator may significantly affect the evidence a defendant will have to confront at trial." *United States v. Sykes*, No 17-CR-96, 2018 WL 3245205, at *3 (E.D. Wis. Feb 2, 2018).  It is also common for the court to order the government to disclose the date it alleges a co-conspirator joined the conspiracy," to enable a defendant "to assess whether a particular statement was allegedly made in furtherance of the conspiracy." *Id.* at *4.

Third, Wicks needs the names of the unindicted co-conspirators to guard against double jeopardy concerns.  Without the names of the alleged co-conspirators, Wicks cannot know whether a conviction or acquittal for count 1 of the indictment protects him from a future prosecution.

## SUPPLEMENT TO MOTION TO SUPPRESS AND REQUEST FOR EVIDENTIARY HEARING

To obtain a *Franks's* hearing, a defendant needs to make an offer of proof (1) that the application for the search warrant contained a false statement, (2) that the affiant's state of mind in making the false statement was at least reckless, and (3) that the false statement was material, *i.e.*, necessary for a finding of probable cause. *United States v. Jackson*, 103 F.3d 561, 574 (7th Cir. 1996).  This is a burden of production. Proof by a preponderance of the evidence is not required until the *Franks* hearing itself.  *States v. Glover*, 755 F.3d 811,

820 (7th Cir. 2014), citing *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013).

The key question at the request for a hearing stage is whether the false statement was necessary to the probable cause finding. *United States v. Maro*, 272 F.3d 817, 821 (7th Cir.2001), cert. denied, 535 U.S. 1029 (2002)(an unimportant statement, even if intentionally misleading, does not trigger the needs for a *Franks* hearing). In fact, in deciding whether to grant a *Franks* hearing courts often skip over the first two questions and go directly to the question of whether the allegedly false statement was necessary to probable cause. (Cite). A close look at the application in this case shows that absent the false statements, the application lacks probable cause.[1]

The searched building is divided into multiple units. According to the first application, the owner, Susan LaCava, occupies "most of the first floor and there were several locked doors upstairs for people who rented rooms." The warrant court rejected the first application for a lack of information about which part of the house Wicks allegedly resided in. To remedy this flaw, the second application added five sentences on this subject. Two of the sentences contain false information and one of the sentences adds nothing to the probable cause mix because it is not attributed to anyone. The fourth sentence, by itself, does not establish probable cause to believe that Wicks resided in one of the upstairs

---

[1] Wicks does not concede that the warrant contains probable cause even with the false

apartments.  The five sentences are as follows:

> 1. Detective Dan Feeney contacted the owner, Susan LaCava, who was unable to positively ID any of her tenants upstairs.

This sentence provides important information because it tells the court that the homeowner could not identify the upstairs residents, but it does not add any information on whether or where in the building Wicks resides.

> 2. LaCava occupies the first floor and rents the upstairs to a Jay Purnell and a friend of Purnell's whom she doesn't know.

This statement is wholly conclusory, so it adds nothing.  *See Aguilar* v. *Texas*, 378 U.S. 108 (1964)(conclusory statements give the magistrate virtually no basis at all for making a judgment regarding probable cause). Without information about who allegedly made this statement, there is no way for the court to determine the credibility or basis of knowledge of the source of information.  *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)(warrant issuing judge must consider all of the "circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information...").

> 3. Another tenant, Gerald Harris said both Jay and Fresh are the tenants and are associated with the Ford Escape.

That is not what Harris told police.  Harris actually said that he has seen Jay and Fresh "at the property" and that "Fresh is at the apartment frequently."

---

statements, but that is another matter.

(*See* Ex. 5 at bates 2699). Harris never said that Fresh was a tenant or that Jay is associated with the Ford Escape.

> 4. Harris pointed out both rooms that are associated with Jay and Harris as listed above.

This statement is also false. Detective Feeney submitted an official report concerning what Harris told him. The report does not allege that Harris pointed out a room associated with "Jay." In fact, the report notes that Feeney's interview with Harris occurred on the front porch of the property. Obviously, from the front porch there is no way for Harris to point out specific rooms in the upstairs hallway.

> 5. Other information from Agent Kyle Dilley of DCI and DCI-CI-1 indicated that Wicks is known as Fresh and lives with someone named Jay and both are involved in drug sales.

This statement has several flaws. There is no information about how DCI-CI-1 knows that "Wicks is known as Fresh and lives with someone named Jay and both are involved in drug sales," there is not information about when CI-1 supposedly made this claim or when Wicks supposedly lived with Jay, and the second application does not include any information about the veracity of the CI-1. Even if the court overlooks these flaws and considers the informant statement in the probable cause mix, without the additional false or conclusory statements, the application does not establish probable cause to believe that Wicks resided in one of the upstairs apartments.

The information in the report of Detective Feeney establishes that the second and third applications contain false statements that matter to the probable cause finding.  The affiant knew that Detective Feeney contacted the residence on May 29, 2024, since she mentioned it in the second and third application.  Under these circumstances, there is no excuse for her failure to confirm with Feeney that the facts alleged in the application match the information that was provided to Feeney.  Failure to do so is at best reckless.  Therefore, Wicks is entitled to a *Franks* hearing.

Dated at Madison, Wisconsin this 10th day of March 2026.

Respectfully submitted,

By:

_____/s/_____
Robert T. Ruth

Robert T. Ruth Law Offices, S.C.
7 N. Pinckney Street, #240
Madison, WI  53703
(608)257-2540

*Certificate of Service*

I hereby certify that I served a true copy of this document on the government and all co-counsel via the ECF system.

/s/
Robert T. Ruth